## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:20-cr-373-SI-07 |
| v. | **OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| JOSEPH CUNNINGHAM, | |
| Defendant. | |

Scott E. Bradford, United States Attorney, and Gregory R. Nyhus, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Sara Foroshani, FOROSHANI LAW, LLC, 216 Cascade Avenue, Suite 227, Hood River, OR 97031; and Jamie S. Kilberg, KAUFFMAN KILBERG, LLC, 1050 SW Sixth Avenue, Suite 1414, Portland, OR 97204. Of Attorneys for Defendant Joseph Cunningham.

**Michael H. Simon, District Judge.**

The U.S. Probation Office, which is part of the judicial branch, not the executive branch, has filed several reports alleging that Defendant Joseph Cunningham violated several conditions of his supervised release. Through counsel, Mr. Cunningham has moved to dismiss the alleged violations. ECF 524. He "objects to the statutory structure governing supervised release as unconstitutional by violating his right to indictment and protections from double jeopardy, which are enshrined in the Fifth Amendment." *Id.* at 1. The government responded to Mr. Cunningham's

PAGE 1 – OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

motion (ECF 525), and Mr. Cunnigham replied (ECF 526). On September 15, 2025, the Court held a hearing on this matter. For the reasons stated below, the Court denies Mr. Cunningham's motion to dismiss.

## BACKGROUND

In August 2022, Mr. Cunningham, after indictment, pleaded guilty to Count 7, which charged him with conspiracy to possess with intent to distribute and conspiracy to distribute controlled substances, to use a communication facility, and to maintain drug-involved premises, in violation of 21 U.S.C. §§ 841(a)(l), 841(b)(l)(A)(viii), 84l(b)(l)(B)(vi) 843(b), 856(a) and 846. ECF 311. In December 2022, the Court sentenced Mr. Cunnigham to imprisonment for a term of time served plus three years of supervised release. ECF 368. Mr. Cunningham began his period of supervision on December 20, 2022, which currently is scheduled to expire on December 19, 2025. ECF 508.

The Probation Office has alleged that Mr. Cunnigham failed to comply with the conditions of his supervised release by violating: (1) Mandatory Condition No. 3 (requiring that Mr. Cunningham refrain from unlawful use of controlled substances), with conduct that allegedly occurred on January 14, 25, and 28, 2025; and (2) Special Condition No. 2 (requiring that Mr. Cunnigham submit to substance abuse testing up to 12 urinalysis tests per month and must not attempt to obstruct or tamper with testing methods), with conduct that allegedly occurred on: (a) November 4, 12, 17, and 26, 2024; (b) December 4, 6, 12, and 21, 2024; (c) January 11, 14, 15, 25, and 28, 2025; (d) February 4, 2025; (e) March 23 and 29, 2025; and (f) April 4, 6, and 11,

2025.[1] ECF 508; *see also* ECF 368 at 5. The Court has scheduled a supervised release hearing for September 29, 2025. ECF 523.

### FEDERAL SENTENCING GENERALLY, INCLUDING SUPERVISED RELEASE

After a federal defendant who is a natural person has been found guilty of a criminal offense, either by trial or plea, a district court shall sentence that defendant by imposing a term of imprisonment, a term of probation, or a fine. 18 U.S.C. § 3551(b). When deciding an appropriate sentence, a court must consider the factors listed in § 3553(a). If a judge imposes a sentence that includes a term of imprisonment, the sentence also may include "a requirement that the defendant be placed on a term of supervised release after imprisonment." § 3583(a).[2]

Supervised release comes with conditions, some of which are mandatory and some of which are discretionary. *See* § 3583(d). One of the explicit conditions that a court must order is "that the defendant not commit another Federal, State, or local crime during the term of supervision." *Id.* In addition, subject to certain exceptions not relevant here, "[t]he court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance." *Id.*

---

[1] The Probation Office also identified other dates of alleged violations by Mr. Cunnigham but later stated that it will not be pursuing those allegations.

[2] In the Sentencing Reform Act of 1984, Congress established the United States Sentencing Commission, charged the Commission with creating mandatory sentencing guidelines, abolished federal parole (except for certain offenses) in favor of supervised release, and expanded appellate review of sentencing decisions. Two years later, in the Anti-Drug Abuse Act of 1986, Congress amended the supervised release system. Among other things, the 1986 law authorized federal courts to revoke supervised release and impose a new term of imprisonment, in accordance with the procedures stated in Rule 32.1 of the Federal Rules of Criminal Procedure.

If a defendant violates any of the conditions of supervised release, the court, after considering certain enumerated factors, may, subject to certain limitations,

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a *preponderance of the evidence* that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

§ 3583(e)(3) (emphasis added).[3] Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure describes the process for a revocation hearing and identifies the procedural rights that are available to a person facing revocation or modification of supervised release. Further, the Federal Rules of Evidence, including its provisions regarding hearsay, do not apply to proceedings to revoke or modify supervised release. *See* Fed. R. Evid. 1101(d)(e).

In deciding whether to revoke a defendant's term of supervised release and impose reimprisonment, a district court must consider the enumerated list of sentencing factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). § 3583(e).[4]

---

[3] Unless a statute expressly provides otherwise, the maximum authorized term of supervised release is five years when the underlying crime of conviction is a Class A or Class B felony, three years when the underlying crime of conviction is a Class C or Class D felony, and one year when the underlying crime of conviction is a Class E felony or a misdemeanor (other than a petty offense). 18 U.S.C. § 3583(b).

[4] In addition, under certain circumstances "the court *shall revoke* the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)." § 3583(g) (emphasis added). The circumstances that require revocation and imposition of a term of imprisonment are:

"Conspicuously missing from this list is § 3553(a)(2)(A), which directs a district court to consider 'the need for the sentence imposed' 'to reflect the seriousness of the offense, to promote respect for the law, and to provide *just punishment* for the offense.'" *Esteras v. United States*, 606 U.S. ----, 145 S. Ct. 2031, 2036 (2025) (emphasis added). As the Supreme Court explained in that case, although the "traditional heartland of criminal sentencing" requires a court to consider "retribution, deterrence, incapacitation, and rehabilitation" for purposes of sentencing generally, "retribution" (or "just punishment") may *not* be considered when deciding whether to revoke a defendant's supervised release and reimpose incarceration. *Esteras*, 145 S. Ct. at 2038-40.

As the Supreme Court explained:

> Congress's decision to exclude retribution from the calculus also comports with the role of supervised release in our current criminal justice scheme. Fines, probation, and imprisonment are a court's primary tools for ensuring that a criminal defendant receives just deserts for the original offense. *Supervised release, by contrast, is not a punishment in lieu of incarceration. Rather, it fulfills rehabilitative ends and provides individuals with postconfinement assistance.* So when a defendant violates the conditions of his supervised release, it makes sense that a court must consider the forward-looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution.

*Id.* at 2041 (emphasis added) (citations and quotation marks omitted). "Text, structure, and precedent all point in the same direction: Congress's decision to exclude § 3553(a)(2)(A) from

_____

(1) possessing a controlled substance in violation of a condition set forth in subsection (d);
(2) possessing a firearm in violation of Federal law or a condition of supervised release;
(3) refusing to comply with drug testing imposed as a condition of supervised release; and
(4) testing positive for illegal controlled substances more than three times in one year as part of court-ordered drug testing. *Id.* There is, however, no mandatory minimum term of imprisonment that is required under these circumstances, and a court may impose a term of imprisonment of time served.

§ 3583(e)'s list of sentencing factors means that district courts cannot consider § 3553(a)(2)(A) when deciding whether to revoke supervised release." *Id.* at 2042.

In *Esteras*, the Supreme Court resolved a circuit split.[5] The Ninth Circuit already was one of the circuits that had previously held that a federal court may *not* consider § 3553(a)(2)(A) in the context of a supervised release violation. *See United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006). In *Miqbel*, the Ninth Circuit stated:

> Although a court may consider the need to sanction an individual for violating the conditions of probation or supervised release when formulating its sentence at a revocation proceeding, that type of "sanction" is distinct from the "just punishment" referred to in § 3553(a)(2)(A).

*Id.* The following year, the Ninth Circuit clarified *Miqbel* in *United States v. Simtob*, 485 F.3d 1058 (9th Cir. 2007). In *Simtob*, the Ninth Circuit explained:

> We take this opportunity to clarify the directives set forth in *Miqbel*. Contrary to Simtob's contention, we did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation. The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator. As the Sentencing Guidelines Manual indicates, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the *seriousness of the underlying violation* and the *criminal history of the violator*." U.S.S.G.M. Ch.7, Pt. A(3)(b) (emphasis added). Indeed, 18 U.S.C. § 3583(e) specifically directs sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as set forth in 18 U.S.C. § 3553(a)(1).

*Simtob*, 485 F.3d at 1062 (emphasis in original).

---

[5] "The circuits are divided as to whether district courts may consider § 3553(a)(2)(A) when revoking a term of supervised release. We granted certiorari to resolve this split." *Esteras*, 145 S. Ct. at 2037-38 (footnote omitted).

One further issue, however, still needed clarification from the Ninth Circuit, and that occurred quite recently. In *United States v. Taylor*, No. 24-1244, --- F.4th ----, 2025 WL 2525850 (9th Cir. Sept. 3, 2025), the Ninth Circuit noted that "*Esteras* expressly did not address a related issue: whether when revoking a term of supervised release under § 3583(e), a court can consider 'retribution for the violation of the conditions of the supervised release.'" *Id.* at *5.[6] The Ninth Circuit then answered that question in *Taylor* in the negative.

> [A] court may not *punish* a defendant who has violated the terms of supervised release by engaging in criminal conduct. However, the court may consider a violation of criminal law underlying the supervised release violation in its evaluation of the criminal history of the defendant, the risk of recidivism, and the violator's breach of the court's trust.

*Id.* at *6 (emphasis in original) (citation omitted). Thus, as the law now stands in the Ninth Circuit, when addressing a violation of a condition of a supervised release, a district court may not "punish" a defendant for that violation but may consider the violation when evaluating the criminal history of the defendant, the risk of recidivism, and the violator's breach of the court's trust, when determining whether to revoke supervised release under § 3583(e).

## DISCUSSION

Defendant's argument proceeds in essentially two steps. First, Cunningham contends that because he faces a revocation of supervised release that *might* result in his incarceration for more than one year based on new alleged misconduct, the Fifth Amendment guarantees him the right not to be subjected to such a potential consequence absent a new indictment by a grand jury charging him with the new alleged misconduct.[7] Second, Cunningham asserts that if his first

---

[6] The Court notes that the Ninth Circuit has not yet issued its mandate in *Taylor*. Accordingly, the Court cites *Taylor* only for its persuasive value.

[7] In relevant part, the Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]"

argument fails because he was previously indicted for the underlying crime of conviction, which led to his original sentence, then any *new* potential incarceration for violating a condition of his supervised release—even if that new misconduct is not itself a crime—would violate his rights under the Double Jeopardy Clause of the Fifth Amendment.[8] But not every violation of a condition of supervised release is a "crime." For example, it is not a "crime" to refuse to comply with drug testing. Thus, based on the text of the Fifth Amendment, the Indictment Clause would likely not even apply to such an alleged violation.

According to Cunningham:

> [N]early all defendants facing supervised release violation allegations—including Mr. Cunningham here—have completed their incarceration but nevertheless face additional potential incarceration exceeding one year for new alleged conduct. The Constitution guarantees the right of all defendants facing imprisonment of a year or more to have the allegations presented to a grand jury for indictment. Moreover, to the extent that the courts have, by judicial fiat, declared that the punishment for a supervised release violation somehow relates back to and is an extension of the original criminal conduct, that violates the protections of the [D]ouble [J]eopardy [C]lause[].
>
> \*    \*    \*
>
> Some may argue that double jeopardy is not at issue because every person serving a term of supervised release for a felony conviction has previously been indicted or waived indictment in connection to the original prosecution. While true, that argument misses the mark. No defendant facing supervised release violation allegations is accused of the acts that were identified in the indictment or admitted to at a plea. That is, no defendant facing supervised

---

U.S. CONST. amend. V. Citing *Green v. United States*, 356 U.S. 165, 183 (1958), and *Mackin v. United States*, 117 U.S. 348 (1886), Cunningham notes that an "infamous crime" is a crime punishable by imprisonment for more than one year.

[8] The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

PAGE 8 – OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

> release violation allegations has previously been indicted or
> waived indictment for those specific acts.

Defendant's Motion (ECF 524) at 4, 13.

Defendant's first argument is without merit. In *Johnson v. United States*, the Supreme Court held that sanctions imposed upon revocation of supervised release are part of the penalty for the *initial* offense, not a new prosecution. 529 U.S. 694, 699-701 (2000). Further, because an alleged violation is brought to the attention of the court by the Probation Office, which is part of the judicial branch, a supervised release violation proceeding is not even criminal prosecution, let alone a new one.

Even before *Johnson*, the Ninth Circuit recognized that the terms of supervised release, and the consequences for violating those terms, are simply "part of the whole matrix of punishment" arising out of the underlying crime of conviction. *See United States v. Soto-Olivas*, 44 F.3d 788, 792 (9th Cir. 1995) (quoting *United States v. Paskow*, 11 F.3d 873, 883 (9th Cir. 1993)). In other words, a supervised release "revocation proceeding is not a new criminal proceeding but is instead part of the 'matrix of punishment' arising out of the original crime." *United States v. Hulen*, 879 F.3d 1015, 1020 (9th Cir. 2018) (quoting *Soto-Olivas*, 44 F.3d at 792). "A term of supervised release and any resulting revocation sentence are part of the sentence authorized for the underlying criminal conviction." *United States v. Henderson*, 998 F.3d 1071, 1074 (9th Cir. 2021) (citing *United States v. Purvis*, 940 F.2d 1276, 1296 (9th Cir. 1991)). Thus, a new indictment is not needed. Defendant already was indicted for the underlying crime of conviction, and the period of supervised release, including its conditions and the consequences for violating one or more of those conditions, is simply a feature of the rehabilitative phase of defendant's sentence for the original crime.

Turning next to Defendant's double jeopardy argument, although the Ninth Circuit has not yet ruled on that question, essentially the same argument that Defendant now advances has already been rejected by two other Circuits, the Second and the Eighth. Relying on *Johnson*, the Second Circuit rejected the argument that supervised release revocation proceedings violate the Double Jeopardy Clause. In *United States v. Pettus*, 303 F.3d 480, 486 (2d Cir. 2002), then-Circuit Judge Sotomayor, writing for a unanimous panel, rejected the argument that if § 3583(h)[9] is interpreted "to deny defendants credit for time previously served on supervised release," that would "run[] afoul of the Double Jeopardy Clause of the Fifth Amendment."

Then-Circuit Judge Sotomayor noted:

> The Supreme Court has outlined the different types of protection that the Double Jeopardy Clause affords: "The Fifth Amendment guarantee against double jeopardy . . . has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

*Id.* at 486-87 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). She then explained:

> Pettus maintains that this case implicates the third of these protections. However, *a violation of the conditions of supervised release does not constitute a new crime, and the revocation of supervised release is not properly considered a new punishment. See Johnson*, 529 U.S. at 700 ("[P]ostrevocation sanctions [are] part of the penalty for the initial offense. . . ."); *United States v. Amer*, 110 F.3d 873, 884 (2d Cir.1997). *The requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified or extended. As the Supreme Court has held, "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific*

_____

[9] Section 3583(h) provides: "When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h).

> moment in time what the exact limit of his punishment will turn out
> to be." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980).

*Id.* at 487 (emphases added).

Seven years later, the Eighth Circuit, also relying on *Johnson*, held that "[a] hearing to determine whether supervised release should be revoked . . . is not a criminal prosecution" and "the revocation of supervised release is a penalty attributable to the original conviction, not a new punishment." *United States v. Bennett*, 561 F.3d 799, 802 (8th Cir. 2009). "Bennett, therefore, was not at risk for either successive prosecution or successive punishment at the multiple revocation hearings, and double jeopardy concerns did not arise." *Id.*

In 2022, the Second Circuit in *United States v. Peguero*, 34 F.4th 143 (2d Cir. 2022), citing *Pettus*, rejected broad and systemic constitutional challenges to the entire regime of supervised release revocation proceedings. In *Peguero*, the Second Circuit stated that "[i]t is well-established in our Circuit that the supervised release revocation process, and its attendant procedural mechanisms, is constitutional." *Id.* at 157. The court then added in a footnote: "Moreover, at the time of filing, we are not aware of any decisions by our sister Circuits to the contrary." *Id.* at n.7.[10]

---

[10] In *Peguero*, U.S. District Judge Stefan R. Underhill, sitting by designation, dissented and argued that supervised release is materially different from parole and, thus, the earlier decisions upholding the constitutionality of parole revocation proceedings should not be applied to supervised release revocation proceedings. Judge Underhill concluded: "Although I acknowledge that the majority's holding today is supported by precedent, I cannot agree that Peguero was entitled to anything less than the full panoply of constitutional rights prior to being sentenced to twenty-eight months in prison for committing felony assault." 34 F.4th at 179 (Underhill, J., dissenting). Several months after writing that dissent, Judge Underhill co-authored a law review article that expressed similar points. *See* Stefan R. Underhill, Grace E. Powell, *Expedient Imprisonment: How Federal Supervised Release Sentences Violate the Constitution*, 108 Va. L. Rev. Online 297 (2022).

Faced with this long line of precedent, Cunningham attempts to support his motion with the Supreme Court's plurality opinion in *United States v. Haymond*, 588 U.S. 634 (2019). Cunningham argues:

> In his plurality opinion in *Haymond*, Justice Gorsuch recognized the critical distinction between parole and supervised release: parole shortened prison time, leaving a portion of the defendant's imposed-incarceration unserved, whereas supervised release is imposed in addition to and following a prison sentence. *United States v. Haymond*, 588 U.S. 634, 651-52 (2019) (finding that the "structural difference" between the parole system and supervised release system "bears constitutional consequences").

Defendant's Reply (ECF 526) at 3. Defendant implies that the Ninth Circuit cases that pre-date *Haymond*, such as *Soto-Olivas*, should be afforded less weight after *Haymond*. *See, e.g., id.* at 9.

The Court rejects Defendant's implications for two reasons. First, Defendant reads too much into *Haymond*. That case involved only the constitutionality of § 3583(k), which provides for certain *mandatory minimum* sentences in a supervised release revocation proceeding, based on a judge's fact-finding by a preponderance of the evidence. The plurality decision in *Haymond* concluded that § 3583(k) violated the Due Process Clause of the Fifth Amendment and the Sixth Amendment's right to a jury trial. Justice Gorsuch's plurality opinion was joined by Justices Ginsburg, Sotomayor, and Kagan. Justice Alito dissented, joined by Chief Justice Roberts and Justices Thomas and Kavanaugh. What made Justice Gorsuch's opinion the plurality decision of the Court was the fact that Justice Breyer concurred "in the judgment."

But as Justice Breyer explained:

> I agree with much of the dissent, in particular that the role of the judge in a supervised-release proceeding is consistent with traditional parole. As 18 U.S.C. § 3583 makes clear, Congress did not intend the system of supervised release to differ from parole in this respect. And in light of the potentially destabilizing consequences, I would not transplant the *Apprendi* line of cases to the supervised-release context.

PAGE 12 – OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

> Nevertheless, I agree with the plurality that this specific provision of the supervised-release statute, § 3583(k), is unconstitutional. Revocation of supervised release is typically understood as part of the penalty for the initial offense. The consequences that flow from violation of the conditions of supervised release are first and foremost considered sanctions for the defendant's breach of trust— his "failure to follow the court-imposed conditions that followed his initial conviction—not for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct. . . .
>
> Section 3583(k) is difficult to reconcile with this understanding of supervised release. In particular, three aspects of this provision, considered in combination, lead me to think it is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach. First, § 3583(k) applies only when a defendant commits a discrete set of federal criminal offenses specified in the statute. Second, § 3583(k) takes away the judge's discretion to decide whether violation of a condition of supervised release should result in imprisonment and for how long. Third, § 3583(k) limits the judge's discretion in a particular manner: by imposing a mandatory minimum term of imprisonment of not less than 5 years upon a judge's finding that a defendant has committed any listed criminal offense.

*Haymond*, 588 U.S. at 657-58 (Breyer, J., concurring in the judgment) (cleaned up).[11]

Second, the Supreme Court in its recent decision in *Esteras* began by noting that a "criminal sentence may include both time in prison and a term of supervised release," that "[s]upervised release comes with conditions," and "[i]f the defendant violates one of these conditions, then the district court may revoke the term of supervised release and require reimprisonment." 145 S. Ct. at 2036. Seven Justices joined that portion of Justice Barrett's majority opinion; only Justice Alito, joined by Justice Gorsuch, dissented in *Esteras*. Moreover,

---

[11] In *Peguero*, the Second Circuit discussed *Haymond* and similarly concluded that it left settled law intact as to the constitutionality of supervised release revocation proceedings. *See Peguero*, 34 F.4th at 159 (noting that "a prior panel of this Circuit has already directly addressed *Haymond's* effect and concluded decisively that the decision 'did not undermine, let alone overrule, our precedent on the validity of [Section] 3583(e)'") (quoting *United States v. Doka*, 955 F.3d 290, 292, 296-99 (2d Cir. 2020) (brackets in original)).

as already noted, Justice Alito wrote the dissenting opinion in *Haymond*, joined by Chief Justice

Roberts, Justice Thomas, and Justice Kavanaugh. Thus, the general framework and statutory

structure for supervised release revocation proceedings under § 3583(e) remains intact and

constitutional.

**CONCLUSION**

The Court DENIES Defendant's Motion to Dismiss the Alleged Supervised Release

Violations Under the Fifth Amendment to the U.S. Constitution, ECF 524.

**IT IS SO ORDERED.**

DATED this 16th day of September, 2025.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge